## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ILLINOIS UNION INSURANCE
COMPANY
525 W. Monroe Street, Suite 400
Chicago, Illinois 60661

     *Plaintiff,*

      v.

HYDRO INTERNATIONAL, PLC,
94 Hutchins Drive
Portland, Maine 04102

HYDRO INTERNATIONAL
HOLDINGS, INC.,
2925 N.W. Aloclek Drive
Hillsboro, OR 97124

HIL TECHNOLOGY, INC.,
94 Hutchins Drive
Portland, Maine 04102

     and

EUTEK SYSTEMS INC.
2925 N.W. Aloclek Drive
Hillsboro, OR 97124

     *Defendants*.

Civil Action
No._____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Illinois Union Insurance Company ("IUIC"), through its undersigned

counsel, hereby asserts this Complaint against Defendants Hydro International PLC,

Hydro International Holdings, Inc. ("Hydro"), HIL Technology, Inc., and Eutek

Systems, Inc. (collectively, the "Defendants"), and alleges as follows:

## INTRODUCTION

1.      This action concerns Policy Number G24151785 001 (the

"Policy") issued by IUIC to Hydro for the Policy Period of August 1, 2010 to

August 1, 2011.  Defendants have demanded coverage under the Policy in connection

with an action filed in the Commonwealth of Pennsylvania Court of Common Pleas

District 45, styled *Sewer Authority of the City of Scranton v. Fabcor, Inc. and*

*Hydro International, PLC, HIL Technology, Inc., and Eutek, Inc.*, Case No. 11-CV-

3827 (the "Underlying Action").  A true and correct copy of the complaint in the

Underlying Action is attached hereto as Exhibit B and is incorporated in this

complaint as if fully reproduced herein.

2.      The plaintiff in the Underlying Action, the Sewer Authority of the

City of Scranton ("Authority") alleged in its complaint that the Defendants

entered into a contract with Fabcor, the general contractor of a project to improve

Scranton's water treatment facility, under which Defendants agreed to provide two

"Grit Snail" units to remove grit from raw wastewater.  The complaint alleges that the

Defendants breached their contractual obligation to provide satisfactory Grit Snail units,

as the units allegedly failed to perform as promised.  All told, the Authority demands

compensatory damages in the amount of $1,000,000 together with costs,

reasonable attorneys' fees, and any other available remedies.  Exhibit B at 8.

3.      In this litigation, IUIC seeks a declaration that it has no obligation to

provide coverage (including any defense or indemnity) under the Policy with respect to

the Underlying Action, and that the Court award to IUIC such other relief as it may

deem just and proper.

## PARTIES

4.      Plaintiff Illinois Union Insurance Company is a stock insurance company,

organized and incorporated under the laws of the State of Illinois, with its principal

place of business and administrative office in Chicago, Illinois.

5.      Upon information and belief, Defendant Hydro International PLC is a

corporation organized and existing under the laws of the United Kingdom, with its

principal United States place of business located in the State of Maine, and is the

parent corporation of the remaining Defendants.

6.      Upon information and belief, Defendant Hydro International Holdings,

Inc. is a corporation organized and existing under the laws of the State of Oregon, with

its principal place of business located in the State of Oregon.

7.      Upon information and belief, Defendant HIL Technology, Inc., is a

corporation organized and existing under the laws of the State of Maine, with its

principal place of business located in the State of Maine.

3

8.      Upon information and belief, Defendant Eutek Systems Inc. is a

corporation organized and existing under the laws of the State of California, with its

principal place of business located in Hillsboro, Oregon.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this Complaint

pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. §§ 2201 and 2202.  IUIC and

Defendants are of diverse citizenship and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over each of the Defendants pursuant

to 42 Pa. Cons. Stat. § 5322 because each of the Defendants has engaged in

transactions or business within this State from which this action arises.

11.     Venue lies in this federal district pursuant to 28 U.S.C. § 1391(a)

because a substantial part of the events or omissions giving rise to IUIC's claims

occurred in this judicial district.

## FACTS

### THE POLICY

12.     IUIC issued the Policy for the Policy Period of August 8, 2010 to August

8, 2011.  The Policy provides a General Aggregate Limit of $2,000,000 for all Claims

under all Liability Coverage Sections other than Products/Completed Operations.  A

true and correct copy of the Policy is attached as Exhibit A.

13.     Fabcor, Inc., the first named defendant in the underlying action, is not

an insured under the Policy, has not sought coverage under the Policy and is not

named as a defendant in this Complaint.

14.     The Policy was issued to Hydro International Holdings, Inc. as the

Named Insured.  By endorsement to the Policy, HIL Technology, Inc. and Eutek

Systems Inc. are also Named Insureds.

15.     Upon information and belief, Hydro International PLC, the second

named defendant in the Underlying Action, is a stockholder of one or more of the

Named Insureds under the Policy.

16.     Coverage A of the Commercial General Liability ("CGL") Coverage

in the Policy, covering "Bodily Injury and Property Damage Liability" states in

pertinent part:

> We will pay those sums that the insured becomes legally
> obligated to pay as damages because of "bodily injury" or
> "property damage" to which this insurance applies. We will
> have the right and duty to defend the insured against any
> "suit" seeking those damages. However, we will have no
> duty to defend the insured against any "suit" seeking
> damages for "bodily injury" or "property damage" to which
> this insurance does not apply. We may, at our discretion,
> investigate any "occurrence" and settle any claim or "suit"
> that may result.

17.     Coverage A(1)(b) provides in pertinent part: "This insurance applies

to 'bodily injury' and 'property damage' only if (1) The 'bodily injury' or

'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"

18.     "Occurrence" is defined in Section VI of the CGL Coverage as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

19.     "Property damage" is defined in Section VI of the CGL Coverage as

(a)     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b)     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

20.     "Your product" is defined in Section VI of the CGL Coverage to mean "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (i) You; (ii) Others trading under your name; or (iii) A person or organization whose business or assets you have acquired; and (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products."  It also includes: (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and (2) The providing of or failure to provide warnings or instructions."  It "[d]oes not include vending machines or other property rented to or located for the use of others but not sold."

21.     "Your work" is defined in Section VI of the CGL Coverage to mean

"(1) Work or operations performed by you or on your behalf; and (2) Materials,

parts or equipment furnished in connection with such work or operations."  It also

includes "(1) Warranties or representations made at any time with respect to the

fitness, quality, durability, performance or use of "your work", and (2) The

providing of or failure to provide warnings or instructions.

22.     "Impaired property" is defined in Section VI of the CGL Coverage to

mean "tangible property, other than 'your product or your work', that cannot be

used or is less useful because (a) It incorporates 'your product' or 'your work' that

is known or thought to be defective, deficient, inadequate or dangerous; or (b) You

have failed to fulfill the terms of a contract or agreement; if such property can be

restored to use by: (a) The repair, replacement, adjustment or removal of "your

product" or "your work"; or (b) Your fulfilling the terms of the contract or

agreement."

23.     The CGL Coverage has various exclusions in Section I.2.  In pertinent

part, these state that "This insurance does not apply to:"

> k.     Damage To Your Product
> 'Property damage' to 'your product' arising out of it or any part of it."
>
> l.     Damage To Your Work
> "Property damage" to "your work" arising out of it or any part of it
> and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.     Damage To Impaired Property Or Property Not Physically Injured
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.     Recall Of Products, Work Or Impaired Property
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

24.     The Contractors Pollution Liability Coverage in the Policy does not apply to the Underlying Action and, in any event, Exclusion 14 of the Contractors Pollution Liability Coverage bars coverage for **"[b]odily injury** or **property damage** arising out of **your product**."[1]

25.     The Professional Liability Coverage in the Policy does not apply to the Underlying Action and, in any event, Exclusion 14 of the Professional Liability Coverage excludes coverage for "**Claim(s)** arising out of **your product**."

## THE UNDERLYING ACTIONS

26.     On June 21, 2011, the plaintiff in the Underlying Action filed its complaint against Fabcor, Hydro International PLC and Defendants HIL Technology, Inc., and Eutek, Inc.

27.     The complaint in the Underlying Action alleges that on or about November 21, 2007, Fabcor and the Authority executed a contract "whereby Fabcor agreed to be the general contractor on the Authority's wastewater treatment facility Phase II Improvements."  Exhibit B at ¶ 7.

28.     Fabcor began work on the contract in November 2007 and continued until the summer of 2009.  *Id.* at ¶ 8, 14.

29.     During execution of the contract, Fabcor installed two Grit Snail units manufactured and supplied by Hydro through Eutek Systems, Inc.  *Id.* at ¶ 10.

---

[1] Terms in bold type herein are used as defined in the Policy.

30.     The complaint alleges that the Grit Snails did not perform in conformance with the contract specifications by, among other deficiencies, not removing the proper amount of grit from the wastewater and requiring substantial additional manual labor to keep the Grit Snail units operating.  *Id.* at ¶ 15.

31.     The complaint alleges that the Grit Snail units' components experienced excessive wear, requiring replacement and repair far more frequently than is normal for this type of wastewater equipment.  *Id.* at ¶ 16.

32.     The complaint further alleges that the Defendants' failures have damaged the plaintiff in the Underlying Action by requiring additional expenditures to manage the required volume of grit, preventing the Authority from accepting and treating wastewater as it is required to do under federal and Pennsylvania state law, for which the Authority may be subject to civil penalties; incurring costs to hire engineers to advise the Authority on how to correct the grit removal problems; and the additional costs that the Authority will incur in designing and constructing changes in a corrective action program at these facilities.  *Id.* at ¶ 17-19

33.     Count II of the complaint in the Underlying Action is the only count that names the Defendants.  Count II specifically alleges a "BREACH OF CONTRACT" by Defendants for failing to provide the equipment required by the contract specifications and requesting compensatory damages in the amount of

$1,000,000, along with costs, reasonable attorney's fees and other just remedies.

*Id.* at ¶ 27-32.

34.     Count II of the complaint in the Underlying Action does not allege

negligence by any Defendant.

35.     On July 12, 2011, Defendants informed IUIC by letter of the

Underlying Action and requested coverage.

36.     IUIC commenced an investigation concerning the availability of coverage

under the Policy for the Underlying Action.  By letter dated July 29, 2011 IUIC

informed Hydro of IUIC's coverage views and fully reserved its rights..  The letter is

attached as Exhibit C.

37.     IUIC is presently defending Defendants with respect to the Underlying

Action under a full reservation of rights.

### CLAIM FOR DECLARATORY RELIEF: NO DUTY TO DEFEND OR INDEMNIFY WITH RESPECT TO UNDERLYING ACTION

38.     IUIC realleges and reincorporates by reference herein all of the foregoing

allegations.

39.     The Policy bars coverage for the breach of contract alleged in the

Underlying Action as it is not an "occurrence" as defined in the Policy.

40.     Exclusions 2.k and 2.l. of the CGL Coverage exclude "property

damage" to Defendants' product ("your product") or Defendants' work ("your

work"), which bars coverage for the Underlying Action based on the Authority's allegation that components of the Grit Snail units experienced excessive wear requiring repair and replacement at a frequency that has caused the Authority damages.

41.    The Policy does not afford coverage for the Underlying Action pursuant to Exclusion 2.m of the CGL Coverage because the Authority alleges that its wastewater treatment facility is less useful because of the inadequacy of the Grit Snail units since it is prevented from treating the volumes of wastewater required under federal and Pennsylvania law.

42.    The Contractors Pollution Liability Coverage in the Policy does not apply to the Underlying Action and, in any event, Exclusion 14 of the Contractors Pollution Liability Coverage bars coverage for **"[b]odily injury** or **property damage** arising out of **your product**."

43.    The Professional Liability Coverage in the Policy does not apply to the Underlying Action and, in any event, Exclusion 14 of the Professional Liability Coverage excludes coverage for "**Claim(s)** arising out of **your product**."[2]

44.    An actual and justiciable controversy exists between IUIC and Defendants with respect to the parties' rights and obligations under the Policy.  In particular,

---

[2]    Because the Underlying Action is still developing, IUIC reserves the right to raise additional policy provisions and coverage defenses and expressly does not waive any such rights and defenses.

Defendants seek coverage under the Policy for the Underlying Action, and IUIC contends, for the reasons set forth here and in its July 29, 2011 correspondence, that it is not obligated to defend or indemnify Defendants with respect to the Underlying Action because one or more of the Policy's terms, conditions, exclusions or limitations bar coverage for the Underlying Action.

45.     The entry of a declaratory judgment concerning the application of the Policy's definition of "occurrence" and its various Exclusions and other terms and conditions is necessary and would be effective to resolve the controversy between the parties and will clarify the parties' legal relations.

46.     For these reasons, IUIC requests that the Court enter judgment declaring that IUIC is not obligated to defend or indemnify Hydro International PLC, Hydro International Holdings, Inc., HIL Technology, Inc., or Eutek Systems, Inc. in connection with the Underlying Action because the Policy does not afford coverage for the Underlying Action.

**WHEREORE, IUIC** prays as follows:

(a)     that the Court enter judgment declaring that the IUIC is not obligated to defend any Defendant in the Underlying Action;

(b)     that the Court enter judgment declaring that the Policy does not afford coverage with respect to the Underlying Action;

(c)     that the Court enter judgment declaring that the Policy does not

afford indemnity coverage for any liability sustained by Hydro

International PLC, Hydro International Holdings, Inc., HIL Technology,

Inc., or Eutek Systems, Inc. with respect to the Underlying Action;

(d)     that the Court grant IUIC such other and further relief as the

Court may deem appropriate.


Dated:  March 13, 2012

/s David F. Abernethy
David F. Abernethy (PA Bar # 36666)
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone: (215) 988-2503
Fax: (215) 988-2757
Email: David.Abernethy@dbr.com

*Attorney for Plaintiff Illinois Union
Insurance Company*