## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ILLINOIS UNION INSURANCE CO. | : |
| | : |
| **Plaintiff** | : |
| v. | :     **3:12-cv-0511** |
| | :     **(JUDGE MARIANI)** |
| **HYDRO INTERNATIONAL, PLC,** | : |
| **HYDRO INTERNATIONAL** | : |
| **HOLDINGS, INC., HIL** | : |
| **TECHNOLOGY, INC., and** | : |
| **EUTEK SYSTEMS INC.** | : |
| | : |
| **Defendants** | : |

### MEMORANDUM OPINION

The present insurance coverage dispute is now before the Court by way of Plaintiff's

Motion for Summary Judgment. The parties have fully briefed the issues, and provided a

comprehensive statement of undisputed facts. (*See* Defs.' Ans. to SMF, ECF Dkt. 30.) The

matter is now ripe for disposition.

### THE PARTIES' STATEMENT OF UNDISPUTED FACTS

Plaintiff Illinois Union Insurance Company ("Plaintiff") issued an insurance policy to

Hydro International Holdings, Inc. "with an effective period of August 1, 2010 to August 1,

2011 (the "IUIC Policy"). (Defs.' Ans. to SMF at ¶ 1, ECF Dkt. 30.) The IUIC Policy was

issued by Plaintiff at Defendants headquarters in Oregon, and bore the policy number

G24151785001. (Defs.' Ans. to SMF at ¶ 1.) "The IUIC Policy affords coverage under a

Commercial General Liability Coverage Part (the "CGL Part") to Hydro International

Holdings, Inc., HIL Technology, Inc. and Eutek Systems, Inc." (Defs.' Ans. to SMF at ¶ 2.)

Coverage A of the CGL Part provides, in pertinent part:

> a. We will pay those sums that the insured becomes legally obligated to pay
> as damages because of 'bodily injury' or 'property damage' to which this
> insurance applies. We will have the right and the duty to defend the insured
> against any 'suit' seeking those damages. However, we will have no duty to
> defend the insured against any 'suit' seeking damages to which this insurance
> does not apply . . . ."

> b. This insurance applies to 'bodily injury' and 'property damage' only if:
>   (1) The 'bodily injury' or 'property damage' is caused by an
>       'occurrence' that takes place in the coverage territory."

(Defs.' Ans. to SMF at ¶ 3.)

The CGL Part defines an occurrence as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." (Defs.' Ans. to

SMF at ¶ 4.) "Property damage" is defined by the CGL Part as:

a. Physical injury to tangible property, including all resulting loss of use of that
property. All such loss of use shall be deemed to occur at the time of the
physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use
shall be deemed to occur at the time of the "occurrence" that caused it.

(Defs.' Ans. to SMF at ¶ 5.)

The CGL Part further defines "Your product" as:

(1) Any goods or products, other than real property, manufactured, sold, handled,
distributed or disposed of by:
  (i)    You;
  (ii)   Others trading under your name; or
  (iii)  A person or organization whose business or assets you have acquired;
         and

2

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

(Defs.' Ans. to SMF at ¶ 6.)

The CGL Part also defines "'[y]our product' to include, in relevant part: '(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product' . . . ." (Defs.' Ans. to SMF at ¶ 7.) "Your work" is defined by the CGL Part to mean: "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." (Defs.' Ans. to SMF at ¶ 8.) It also defines "your work" to include, in pertinent part, "(1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work' . . . ." (Defs.' Ans. to SMF at ¶ 9.)

"Impaired property," under the CGL Part is defined as:

> Tangible property, other than 'your product of your work', that cannot be used or is less useful because
>
> > a. It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
> > b. You have failed to fulfill the terms of a contract or agreement;
>
> If such property can be restored to use by:
>
> > a. The repair, replacement, adjustment or removal of 'your product' or 'your work'; or
> > b. Your fulfilling the terms of the contract or agreement.

3

(Defs.' Ans. to SMF at ¶ 10.)

The CGL Part contains an exclusion that provides that the policy does not apply to

"'[p]roperty damage' to 'your product' arising out of it or any part of it." (Defs.' Ans. to SMF

at ¶ 11.) The CGL Part contains an additional exclusion that provides that the insurance

does not apply to "'[p]roperty damage' to 'your work' arising out of it or any part of it and

included in the 'products-completed operations hazard.'" (Defs.' Ans. to SMF at ¶ 12.)

Exclusion m, however, of the CGL Part provides that the insurance does not apply to, in

relevant part:

> 'Property damage' to 'impaired property' or property that has not been physically
> injured, arising out of:
>
>> (1) A defect, deficiency, inadequacy or dangerous condition in 'your product'
>> or 'your work'; or
>> (2) A delay or failure by you or anyone acting on your behalf to perform a
>> contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of
> sudden and accidental physical injury to 'your product' or 'your work' after it has
> been put to its intended use.

(Defs.' Ans. to SMF at ¶ 13.)

In addition to the CGL Part, the IUIC Policy provides protection under the

Contractors Pollution Liability Coverage Part (the "Pollution Liability Part"). (Defs.' Ans. to

SMF at ¶ 14.) The Pollution Liability Part provides, in pertinent part:

> 1. We will pay those sums as damages that the insured becomes legally
> obligated to pay as damages because of bodily injury or property damage
> to which this insurance applies. We shall have the right and duty to
> defend the insured against any claim or suit seeking those damages.

4

> However, we shall have no duty to defend the insured against any claim
> or suit seeking damages for bodily injury or property damage to which his
> insurance does not apply.

(Defs.' Ans. to SMF at ¶ 15.)

The Pollution Liability Part provides coverage for "loss," which is defined, in pertinent part, as "property damage, neither expected nor intended from the standpoint of the insured, caused by or resulting from a 'pollution condition.'" (Defs.' Ans. to SMF at ¶ 16.) A "pollution condition" is defined as "the discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal, material matter, irritant, or contaminant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, on, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater." (Defs.' Ans. to SMF at ¶ 17.) The Pollution Liability Part "contains an exclusion that provides that insurance does not apply to property damage arising out of 'your product.'" (Defs.' Ans. to SMF at ¶ 18.)

The IUIC Policy contains a third coverage provision under the Contractors Professional Liability Coverage Part (the "Professional Liability Part"). The Professional Liability Part provides, in pertinent part:

1. We will pay those sums in excess of the retention(s) shown in the Declarations that the insured becomes legally obligated to pay as damages because of claim(s) that result from the rendering or failure to render professional services for others to which this insurance applies. We shall have the right and duty to defend the insured against any suit(s) seeking those damages. However, we have no duties to pay damages as a result of claim(s) nor shall we have any duty to defend the insured

5

against any suit(s) seeking damages that result from rendering or failure to render professional services to which this insurance does not apply. (Defs.' Ans. to SMF at ¶ 20.)

The Professional Liability Part provides protection for claims "that result from the rendering or failure to render 'professional services' for others to which this insurance applies." (Defs.' Ans. to SMF at ¶ 21.) "Professional services" are defined as "those architectural, engineering, consulting, project management or construction management services that are performed by you or on your behalf." (Defs.' Ans. to SMF at ¶ 22.) The Professional Liability Part contains an exclusion that provides that the insurance does not apply to claims arising out of "your product." (Defs.' Ans. to SMF at ¶ 23.) "Both the Pollution Liability Part and the Professional Liability Part contain the same definition of 'your product' as the CGL Part." (Defs.' Ans. to SMF at ¶ 24.)

## Underlying Action for Which Defendants Seek Coverage

"On or around June 21, 2011, the Sewer Authority of the City of Scranton (the 'Sewer Authority') named Hydro International, PLC, HIL Technology, Inc. and Eutek, Inc. as defendants in a lawsuit captioned with an underlying lawsuit captioned Sewer Authority of the City of Scranton v. Fabcor, Inc., et al., filed in the Court of Common Pleas for the Commonwealth of Pennsylvania, Lackawanna County (the 'City of Scranton Action')." (Defs.' Ans. to SMF at ¶ 25.) The parties to the present suit both acknowledge that the Sewer Authority "asserted a single claim for breach of contract against Hydro International,

6

PLC, HIL Technology, Inc. and Eutek, Inc. (the 'Hydro Defendants')." (Defs.' Ans. to SMF at ¶ 26.)

"The Hydro Defendants tendered the City of Scranton Action to IUIC, and IUIC agreed to defend the Hydro Defendants in connection with the City of Scranton Action under a complete reservation of rights." (Defs.' Ans. to SMF at ¶ 27.) "In the complaint in the City of Scranton Action, the Sewer Authority alleges that in November 2007, [it] entered into a contract with Fabcor, Inc., another defendant named in the City of Scranton Action." (Defs.' Ans. to SMF at ¶ 28.) "The complaint further alleges that, under the contract, Fabcor, Inc. agreed to be the general contractor on improvements relating to the Sewer Authority's wastewater treatment facility." (Defs.' Ans. to SMF at ¶ 29.) Further, the complaint alleges that the contract required Fabcor to "procure and install certain equipment to remove grit from raw wastewater." (Defs.' Ans. to SMF at ¶ 30.) The complaint also alleges that "in order to comply with the contract, Fabcor, Inc. procured two 'grit snails,' from the Hydro Defendants." (Defs.' Ans. to SMF at ¶ 31.) "According to the complaint, both Fabcor, Inc. and the Hydro Defendants represented that the grit snails conformed with the specifications set forth in the cont[r]act between Fabcor, Inc. and the Sewer Authority." (Defs.' Ans. to SMF at ¶ 32.) "The complaint alleges that the grit snails have not functioned in conformance with the required specifications, and that, as a result, the Sewer Authority has incurred and will continue to incur substantial cost in attempting to correct the deficiencies." (Defs.' Ans. to SMF at ¶ 33.) "The complaint also alleges that the Sewer Authority may be

7

subject to penalties from the Pennsylvania Department of Environmental Protection as a result of the deficiencies." (Defs.' Ans. to SMF at ¶ 34.)

In addition, the complaint in the City of Scranton Action alleges that the grit snail units "have not been able to manage and remove from the other portions of the wastewater treatment system the required amounts of grit. The Grit Snails have failed at grit load rates below the specified three cubic yards per hour unit rates." (Defs.' Additional SMF at ¶ 1, ECF Dkt. 30; Complaint of the Sewer Authority of the City of Scranton at ¶ 15.) The complaint in the City of Scranton Action also alleges that the failure "has required substantial amounts of manual labor to keep the Grit Snails operating and to avoid the failure of other, downstream elements of the wastewater treatment process." (Defs.' Additional SMF at ¶ 2; Complaint of the Sewer Authority of the City of Scranton at ¶ 15.) "The City of Scranton has alleged that it has not been able to accept some wastewater, that it has incurred substantial costs in employing engineering consultants, and that it is subject to civil penalties from the Pennsylvania DEP and the United States EPA." (Defs.' Additional SMF at ¶ 3; see Complaint of the Sewer Authority of the City of Scranton at ¶¶ 17-19.)

The complaint in the City of Scranton Action also alleges that as a result of Defendants' failures, "the Authority has incurred substantial additional costs and expenses including, but not limited to, increased cost of operation, costs to remedy, address, or repair defects resulting from the breach of contract, and the Authority may be subject to monetary penalties imposed for any noncompliance with its State/Federal-issued wastewater

8

discharge permit and/or for any unpermitted water flows." (Defs.' Additional SMF at ¶ 4; see Complaint of the Sewer Authority of the City of Scranton at ¶¶ 17-19.)

The parties also agree that Count II of the complaint in the City of Scranton Action "does not state that there [is] a contract between the City of Scranton and the Hydro Defendants." (Defs.' Additional SMF at ¶ 5.) "Instead the City of Scranton alleges that it is a beneficiary of the contract between Fabcor and the Hydro Defendants." (Defs.' Additional SMF at ¶ 5.) The complaint similarly asserted that the City of Scranton "relied upon the superior professional knowledge and technical expertise of Hydro International to supply equipment pursuant to the specifications and to ensure that such equipment would be acceptable for service at the Authority's wastewater treatment facility." (Defs.' Additional SMF at ¶ 6.) Finally, the City of Scranton also alleged that as a result of the Hydro Defendant's failures, "the Authority has incurred substantial additional costs and expenses including, but not limited to, increased cost of operation, costs to remedy, address, or repair defects resulting from the breach of contract, and the Authority may be subject to monetary penalties imposed for any noncompliance with its State/Federal-issued wastewater discharge permit and/or for any unpermitted water flows." (Defs.' Additional SMF at ¶ 7.)

## STANDARD

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing

9

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## CHOICE OF SUBSTANTIVE LAW

The parties contend that the laws of both Pennsylvania and Oregon are implicated in this matter; however, both parties agree that the substantive law in both jurisdictions is similar in all relevant respects.

Federal courts sitting in diversity are required to apply the choice of law rules of the state in which they sit. *See Hammersmith v. TIF Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). In Pennsylvania, courts apply "a flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* at 227; *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. Ct. 2005)("[u]nder the flexible conflict methodology

10

approach to insurance contract cases, which was set forth by out Supreme Court in *Griffith[1]*, the court must apply the law of the state having the most significant contacts or relationships to the contract and not the underlying tort"). If there is a genuine conflict of laws between Pennsylvania and another jurisdiction, the district court must "consider each state's contacts with the contract as set forth in the Restatement (Second) of Conflict of Laws" and evaluate those contacts according to the states' relationship to the issues and policies concerned. *See Specialty Surfaces Int'l v. Continental Cas. Co.*, 609 F.3d 223, 230 (3d Cir. 2010). If a genuine conflict of substantive law does not exist, Pennsylvania law will apply. *See Budtel Assocs. V. Continental Cas. Co.*, 915 A.2d 640, 645 (Pa. Super. Ct. 2006); *Specialty Surfaces Int'l*, 609 F.3d at 230 ("[w]hen both states' interests would be harmed by the application of the other state's law, there is a 'true conflict,' and we must engage in the contacts and interests analysis to determine which state's law should apply").

Although the IUIC Policy was issued to the insured at its headquarters in Oregon, the contract at issue in the underlying dispute applied to work performed in the Commonwealth of Pennsylvania and the alleged breach of contract took place in Pennsylvania. As a result of the substantial contacts between the contract and the Commonwealth of Pennsylvania, the interests involved, and the concession by both parties in their briefs that Pennsylvania and Oregon law are substantially similar with regard to the applicable substantive law, the Court will apply Pennsylvania law.

---

[1] *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

11

## DISCUSSION

The parties agree to the material facts at issue in this case; thus, the dispute can be resolved as a matter of law. To that end, the Court is confronted with two fundamental questions: (1) do the events described in the agreed statement of facts constitute an "occurrence" under the IUIC Policy so that coverage is afforded to the Defendants; and if so, (2) whether any exclusion in the IUIC Policy negates coverage otherwise provided to the Hydro Defendants in the City of Scranton Action. The Court must further address whether, at the present juncture, Plaintiff has a duty to defend, and possibly, an additional burden to indemnify.

### I.    An "Occurrence" Under the IUIC Policy

Plaintiff and Defendants both admit that Count II of the complaint in the underlying City of Scranton Action is a claim for breach of contract (see Defs.' Ans. to SMF at ¶ 26). No other claims are made against the Hydro Defendants in that suit. Nevertheless, Defendants posit that the IUIC Policy should provide coverage because the facts allegedly demonstrate that the Hydro Defendants and the Sewer Authority did not have a contractual relationship and because those same facts demonstrate non-contractual damages arising out of the installation of the Grit Snails.

Pursuant to Pennsylvania law, "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch & Mfg. Co. v.*

12

*Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)(citing *Erie Ins. Exch. v. Claypoole*, 449 Pa. Super. 142, 673 A.2d 348, 355 (1996)). In the course of examining a complaint to determine the coverage provisions and any duty to defend, a court "construes the factual allegations of the underlying complaint liberally in favor of the insured." *Id.* (citing *Biborosch v. Transamerica Inc. Co.*, 412 Pa. Super. 505, 603 A.2d 1050, 1052 (1992)). "[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Mut. Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 745 (1999)(citations omitted).

The IUIC Policy provides coverage for "bodily injury" or "property damage," but only if that damage is caused by an "occurrence." Pursuant to the IUIC Policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Defs.' Ans. to SMF at ¶ 4.)

At the outset it must be noted that the Sewer Authority's allegations in the underlying complaint assert that it is the sole intended beneficiary of the contract between Fabcor, Inc. and the Hydro Defendants for the procurement of Grit Snails. Under Pennsylvania law, the rule that plaintiffs must establish privity of contract in order to maintain a proper cause of action for breach of contract "is not ironclad and parties who lack privity can bring a cause of action if they can show themselves to be intended third party beneficiaries of the contract." *Caciolo v. Masco Contractor Serv's East, Inc.*, No. 04-962, 2004 WL 2677170, at *2 (E.D.

13

Pa. Nov. 22, 2004). Adopting the Restatement (Second) of Contracts, § 302, the

Pennsylvania Supreme Court summarized the relevant standard in *Scarpitti v. Weborg*, 530

Pa. 366, 609 A.2d 147 (Pa. 1992), stating:

> [A] party becomes a third party beneficiary only where both parties to the
> contract express an intention to benefit the third party in the contract itself,
> *unless* the circumstances are so compelling that recognition of the
> beneficiary's right is appropriate to effectuate the intention of the parties, and
> the performance satisfies an obligation of the promisee to pay money to the
> beneficiary or the circumstances indicate that the promisee intends to give the
> beneficiary the benefit of the promised performance.

*Id.* at 372-73.

This Court is not permitted to look beyond the underlying complaint to make a

determination as to coverage, but it is required to look at the facts asserted in the pleadings

to determine if an action sounding in tort can be sustained. *See Kvaerner Metals Div. of*

*Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 896 (2006)

(trial court erred "in looking beyond the allegations raised in [underlying complaint] to

determine whether [insurance company] had a duty to defend [insured] and in finding that

the [product produced by insured's] damages may have been the result of an 'occurrence'").

Although the complaint in the City of Scranton Action only alleges breach of contract, the

Court must determine if the facts alleged in the underlying complaint instead support that

the allegations actually sound in tort as maintained by Defendants in the present suit.

The allegations in the underlying complaint amount to a claim that the Grit Snails do

not conform to a contractually specified and required performance standard. (*See* Defs.'

14

Ans. to SMF at ¶ 32 ("[a]ccording to the complaint, both Fabcor, Inc. and the Hydro Defendants represented that the grit snails conformed with the specifications set forth in the contract between Fabcor, Inc. and the Sewer Authority").) There is nothing in the underlying complaint to indicate that the Grit Snails manufactured by the Hydro Defendants malfunctioned or were defectively constructed. Instead, the complaint alleges that the Sewer Authority and Fabcor, Inc. had a contract that required the installation of Grit Snails, manufactured by the Hydro Defendants, which were to perform at a specific standard. (See Defs.' Ans. to SMF at ¶ 33 ("[t]he complaint alleges that the grit snails have not functioned in conformance with the required specifications, and that, as a result, the Sewer Authority has incurred and will continue to incur substantial cost in attempting to correct the deficiencies").) The underlying complaint further alleges that there was privity of contract between Fabcor, Inc. and the Hydro Defendants for the production of the Grit Snails, and that the Sewer Authority was the "sole intended beneficiary" of the contract between Fabcor, Inc. and the Hydro Defendants. (See Complaint of Sewer Authority in City of Scranton Action at ¶ 29, ECF Dkt. 28-4.)

This Court's duty to look to the underlying complaint in the City of Scranton Action will guide its analysis. As cited by Plaintiff, under both Pennsylvania and Oregon law, breach of contract violations resulting in damages are not generally covered under a commercial general liability policy. See, e.g., Kvaerner Metals Div. of Kvaerner, U.S., Inc.,

15

908 A.2d at 897-88; *Oak Crest Constr. Co. v. Austin Mut. Ins. Co.*, 329 Or. 620, 626, 998
P.2d 1254, 1257 (2000).

Defendants fail to cite any authority for the proposition that the breach of contract
claim in the underlying City of Scranton Action can be transformed into an "occurrence" as
the term is defined in the IUIC Policy simply because they allege a lack of privity between
the Sewer Authority and the Hydro Defendants. Not only does the plain language of the
complaint in the City of Scranton Action indicate that the allegations sound in contract, as
opposed to tort, but the facts underpinning the complaint support that the claim is for breach
of contract. The underlying complaint does not allege that the Grit Snails were incorrectly
manufactured, nor does it allege that they were inadequately designed; the gist of the
complaint is that the parties had agreed that the Grit Snails would perform at a certain level
and that they failed to perform in accordance with the agreed upon expectations of the
parties. The Pennsylvania Supreme Court's holding in *Snyder Heating v. Pennsylvania
Manufacturers' Assoc. Ins. Co.*, 715 A.2d 483 (Pa. Super. 1998) is instructive: "[p]rovisions
of a general liability policy provide coverage . . . if the insured work or product *actively
malfunctions*, causing injury to an individual or damage to another's property." *Id.* at 487. In
the underlying complaint, the facts do not show any catastrophic failure of the Grit Snails,
nor does the underlying complaint allege damage to the Grit Snails themselves. The
damage alleged by the Sewer Authority is that the Grit Snails have failed to conform to

16

certain performance standards contemplated by the parties, and that as a result of this failure to perform the Sewer Authority is incurring damage.

Where, as here, the underlying action is confined to a claim that the insured failed to meet the contract specifications for the Grit Snails that were installed pursuant to a contract between Hydro and Fabcor, which the parties agree was entered into with the Sewer Authority as the sole intended beneficiary, the policy issued by IUIC does not provide coverage for a dispute between the parties arising out of that contractual undertaking. This is particularly the case where, again as here, the allegations of a breach of contract in the underlying action do not meet the definition of an "occurrence" for which coverage is afforded under the IUIC Policy. In *Westfield Ins. Co. v. Bellvue Holding Co.*, 856 F. Supp. 2d 683 (E.D. Pa. 2012), the district court held that the insurer did not have a duty to defend or indemnify the insured homebuilders against claims arising from underlying litigation in which the plaintiffs asserted charges against the insured concerning faulty construction of residential buildings. *Id.* at 698. The district court reaffirmed Pennsylvania law that "the purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." *Id.* at 693 (quoting *Pa. Mfrs' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003)). Relying upon facts similar to those presented to the court in the present matter, the district court ultimately held that "[u]ndoubtedly, any claims arising out of this contractual duty cannot, pursuant to well

17

established Pennsylvania law, constitute 'occurrences' for purpose of coverage under the [general liability policy]." *Id.* at 698.

The Hydro Defendants argue that "[w]here the allegation is essentially one of a negligent design of the equipment that ultimately results in a failure in the field" a duty to defend arises under a CGL Policy. (Defs.' Br. in Opp. at 9.) Defendants cite *National Union Fire Ins. Co. of Hartford v. Robinson Fan Holdings*, 2011 WL 1327435 (W.D. Pa. Apr. 7, 2011), in support of their proposition. *Robinson Fan*, however, offers no support for Defendants' argument. In *Robinson Fan*, a customer brought a breach of contract claim against a manufacturer for damages the customer sustained when the insured manufacturer's fans allegedly failed as a result of design defects. The manufacturer sought coverage under its CGL Policy. The district court noted:

> [T]here is a discernible distinction between a product that actively malfunctions, which could give rise to an "accident," and flawed product-related work done in performance of a contract, which cannot. Cases suggest a material difference between a claim that stems from a "breach[] [of] duty imposed by mutual consensus" – or, an alleged failure to live up to bargained-for standards – and one that stems from breaches of standards of care imposed by law as a matter of social policy, independent of the parties' bargain. The former constitutes uncovered "contractual claims of poor workmanship," even if couched as negligence; the latter, however, may be a covered "active malfunction."

*Id.* at *3.

The Statement of Undisputed Material Facts submitted to the Court by the parties in this case demonstrates that the complaint in the City of Scranton Action alleges only that the Hydro Defendants did not provide Grit Snails that operated in accordance with a

18

contractually agreed-upon level of performance. (See Defs.' Ans. to SMF at ¶ 33.) Nothing in the complaint filed in City of Scranton Action alleges that the Grit Snails were defectively or negligently designed. (See Defs.' Ans. to SMF at ¶ 33.)

Plaintiff's discussion of *Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co.*, 735 F. Supp. 2d 150 (D.N.J. 2010)(applying Pennsylvania law), fails to acknowledge that the causes of action asserted there are distinct from those in the City of Scranton Action. In particular, the underlying complaint in *Schuylkill Stone Corp.* sounded in both contract and tort, whereas the Sewer Authority only sues for breach of contract in the City of Scranton Action. Because the Court is confined to the four corners of the underlying complaint in order to frame the proper cause of action in the City of Scranton Action, see *Kvaerner, supra*, at 896, it is unable to read a tort claim into an action clearly attempting to recover damages for breach of contract. See *Westfield*, 856 F. Supp. 2d at 691 ("[a]n insurance company's duty to defend a suit against an insured is determined solely on the basis of the allegations of the complaint in the underlying action"). The facts in *Schuylkill Stone Corp.* are dissimilar to those asserted in the City of Scranton Action, and the Court is unable to draw a parallel conclusion.

## II. Applicable Exclusions

The complaint in the City of Scranton Action alleges that the Grit Snails require modification in order to bring them into conformance with the level of operation originally expected by the Sewer Authority. Nothing in the underlying complaint alleges that any other

19

property aside from the Grit Snails requires modification or repair. The Grit Snails meet the

definition of "your product" under the IUIC Policy, because they are among "any goods or

products, other than real property, manufactured, sold, handled, distributed or disposed of

by" the Hydro Defendants or others trading under the Hydro Defendants' name. (Defs.'

Ans. to SMF at ¶ 6.) The complaint in the City of Scranton action alleges that the Sewer

Authority's waste water treatment facilities have been injured by the inability of the Grit

Snails to perform at a particular standard as required by contract. The underlying complaint

does not seek damages for injury to any other property, but only for damages arising from

the need to bring the Grit Snails into compliance with the needs of the City of Scranton.

Exclusion "m" of the IUIC Policy provides that coverage is not extended for the

following:

> 'Property damage' to 'impaired property' or property that has not been
> physically injured, arising out of:
>
> > (1) A defect, deficiency, inadequacy or dangerous condition in
> > 'your product' or 'your work'; or
> > (2) A delay or failure by you or anyone acting on your behalf to
> > perform a contract or agreement in accordance with its
> > terms.
>
> This exclusion does not apply to the loss of use of other property arising out
> of sudden and accidental physical injury to 'your product' or 'your work' after it
> has been put to its intended use.

(Defs.' Ans. to SMF at ¶ 13.)

Defendants argue that Plaintiff "relies on no authority but simply asserts that

because the City of Scranton complaint alleges that the waste treatment facilities have been

20

impaired by the failure of the grit snails to meet the contract specifications, the allegations of the Complaint fall squarely within the exclusion." (See Defs.' Br. in Opp. at 12, ECF Dkt. 29.) Defendants further argue that Plaintiff's argument must fail because Plaintiff "does not consider the exclusion to exclusion 'm'". (See Defs.' Br. in Opp. at 12.) Defendants argue that "[t]here clearly are allegations regarding the loss of use of other property by the City of Scranton." (See Defs.' Br. in Opp. at 12.)

Although Defendants cite Cincinnati Ins. Co. v. York Imperial Plastics, 2010 WL 5312221 (Pa. Cmwlth. Ct. Jul. 19, 2010) for the proposition that exclusion "m" may apply to replacement parts but not loss of use, and that exclusion "m" does not bar the duty to defend where alleged defective equipment caused such loss of use, the facts in the present matter render that decision inapplicable. Unlike the factual allegations in this case, the court in York Imperial held that the failure of the product at issue there was sudden and unexpected. See id. at * 75. As discussed earlier in this memorandum, the complaint in the City of Scranton action does not allege "loss of use of other property arising out of sudden or accidental physical injury to "your product" or "your work" after it has been put to its intended use." (Defs.' Ans. to SMF at ¶ 13 (emphasis added).) The claim is for injury arising out of a failure of a product to perform at a contractually specified level, not a claim for sudden or accidental physical injury. Accordingly, the exception to exception "m" cannot apply. The underlying complaint in the City of Scranton Action does not allege any injury to the Grit Snails requiring replacement parts or loss of use of other property arising out of a

sudden or accidental injury to the Grit Snails; rather, it alleges that the Grit Snails do not perform at a certain expected level and that they are causing injury as a result of this alleged breach of contract. The clear terms of the IUIC Policy require a "sudden and accidental physical injury" in order to trigger the exception to exception "m". Because Defendants cannot show such a "sudden and accidental physical injury," the allegations set forth in the underlying complaint in the City of Scranton Action do not present an "occurrence" under the policy at issue and fall squarely within the terms of exclusion "m".

## CONCLUSION

For the reasons set forth in this memorandum opinion, Plaintiff's Motion for Summary Judgment will be granted. An appropriate Order will follow.

DATE: March 11, 2013

Robert D. Mariani
United States District Judge